IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

## STATE OF TENNESSEE v. JAMES M. LANE, JR.

**Interlocutory Appeal from the Criminal Court for Hamilton County**
**Nos. 224987, 224988     Hon. Rebecca J. Stern, Judge**

---

**No. E-1999-00615-CCA-R9-CD - Decided June 1, 2000**

---

James M. Lane, Jr. appeals by permission of the trial and appellate courts.  Indicted for two counts of aggravated perjury, he alleges that the trial court abused its discretion in failing to reverse the district attorney general's denial of pretrial diversion.  Because the prosecutor relied upon improper grounds for denying diversion, we reverse the trial court's finding that the prosecutor did not abuse his discretion in denying diversion.  We remand to the trial court with instructions that the prosecutor enter into a memorandum of understanding for pretrial diversion with the defendant.

**Tenn. R. App. P. 9; Judgment of the Criminal Court Reversed and Remanded.**

WITT, J., delivered the opinion of the court, in which RILEY and WOODALL, JJ., joined.

Larry Roddy, Sale Creek, Tennessee, for the appellant, James M. Lane, Jr.

Paul G. Summers, Attorney General & Reporter, R. Stephen Jobe, Assistant Attorney General, William H. Cox III, District Attorney General, David M. Denney, Executive Assistant District Attorney General.

**OPINION**

We granted the defendant, James M. Lane, Jr.'s, application for interlocutory appeal of the trial court's order affirming the district attorney general's denial of pretrial diversion.  The defendant claims the trial court abused its discretion in upholding the district attorney general's decision and asks that this court order the district attorney general to enter into a memorandum of understanding pursuant to Code section 40-15-105.  Because the prosecutor used some improper bases for denying diversion, we reverse the trial court's determination that the prosecutor did not abuse his discretion in denying diversion and remand the case for the prosecutor to enter into a memorandum of understanding with the defendant.

The defendant has been a firefighter with the Chattanooga Fire Department for over twenty years and has attained the rank of lieutenant.  The defendant has been involved in many civic and charitable activities in his community, and he has received commendations related to his work

as a firefighter. The defendant is the father of three children, two of whom are in his full custody. He has joint custody of a third child. Twice married, the defendant's troubles with the law began during the course of the breakup of his second marriage.[1]

Apparently, the defendant's wife, Dedra Lane, committed an aggravated assault by holding the defendant at gunpoint until she was disarmed by law enforcement officers. A criminal prosecution was initiated against Mrs. Lane, and at the general sessions level the defendant and Mrs. Lane were ordered to have no contact with one another. Mrs. Lane was thereafter indicted. Through Mrs. Lane, the district attorney's office became aware of the defendant's alleged violation of the "no contact" order. The criminal court judge assigned to Mrs. Lane's case held a hearing regarding the matter, at which the court received evidence that the defendant made phone calls to Mrs. Lane's mother's home and Mrs. Lane's place of employment. The defendant denied making these calls despite evidence consisting of a tape recording, Mrs. Lane's testimony, and phone records. As a result of the defendant's testimony at this hearing, the state sought and obtained a two-count aggravated perjury indictment against him.

The defendant applied for pretrial diversion. He attached to his application numerous exhibits attesting to his exemplary job performance, good citizenship, and productive lifestyle.[2] Along with the application, an assistant district attorney general considered additional items of evidence, including a transcript of the hearing at which the defendant is alleged to have perjured himself, telephone records, an order of protection, a tape recording, and file memoranda from the fire chief. In a lengthy letter, an assistant district attorney general set forth his reasons for denying pretrial diversion.[3] Despite findings of many positive attributes of the defendant, the assistant

---

[1]Much of the information about the nature of the offense has been taken from the district attorney general's letter denying pretrial diversion.

[2]Additionally, the defendant attached evidence of his psychiatric status following the aggravated assault by Mrs. Lane. A report of this nature, along with additional letters of support and other documents, accompanied the defendant's application to this court for permission to pursue an interlocutory appeal. However, these documents are not included within the appellate record that was certified to this court by the trial court clerk. Only the documents which appear in the appellate record are properly before us for purposes of disposition on the merits.

[3]The defendant has not challenged the validity of the letter denying pretrial diversion on the basis that the letter was issued by an assistant district attorney general rather than by the district attorney general. Although the pretrial diversion statutes do not mandate that a denial letter be issued by the district attorney general, caselaw speaks of the district attorney general's duties with respect to reviewing and responding to a defendant's request for pretrial diversion. See Tenn. Code Ann. § 40-15-102 (1997) (referring to the "parties to any possible criminal trial" as the persons who "meet to discuss the possibility of pretrial diversion"); Tenn. Code Ann. § 40-15-105(b)(3) (referring to the "prosecuting attorney" as the official who exercises authority over diversion decisions); State v. Pinkham, 955 S.W.2d 956, 959 (Tenn. 1997) (identifying the district attorney general as the

district attorney denied diversion for three reasons. First, the defendant was a city employee and firefighter who abused a position of trust by deliberately lying under oath. Second, as indicated by State v. Perry, 882 S.W.2d 357 (Tenn. Crim. App. 1994), there has been a dramatic increase in perjury, and the need for deterrence exists. Finally, the defendant did not admit his crimes and express remorse, and therefore his potential for rehabilitation was considered limited.

Following the assistant district attorney's denial of pretrial diversion, the defendant sought a writ of *certiorari* in criminal court. Upon consideration, that court found each of the state's reasons for denying pretrial diversion supported by the record. Accordingly, it found no abuse of prosecutorial discretion in the denial of pretrial diversion.

The decision whether to grant pretrial diversion rests within the discretion of the district attorney general. See Tenn. Code Ann. § 40-15-105(b)(3) (Supp. 1999); State v. Hammersley, 650 S.W.2d 353, 355 (Tenn. 1983).

The burden is upon the defendant, "in the first instance, to provide the prosecuting attorney with sufficient background information and data to enable that officer to make a reasoned decision to grant or deny the relief sought." State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989). To carry the burden, an applicant should provide the prosecutor with "as complete an application as circumstances warrant." State v. Winsett, 882 S.W.2d 806, 810 (Tenn. 1993). The application should include evidence relating to the factors the prosecutor is obliged to consider. See State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983). It may include "affidavits, character letters, and other material for the prosecutor's consideration." Winsett, 882 S.W.2d at 810. In addition, "[u]pon stipulation of the parties, the trial court may [order] . . . an investigation of the defendant's background." Tenn. Code Ann. § 40-35-104(a) (1997). A report of this investigation is to be used by the prosecutor as part of the available evidence upon which he or she bases the response to the diversion request. Id.; Winsett, 882 S.W.2d at 810.

Even though the defendant has the burden to demonstrate his or her eligibility and suitability for pretrial diversion, the prosecutor has specific obligations, especially when he or she is denying the application. State v Curry, 988 S.W.2d 153, 157 (Tenn. 1999). When deciding whether to enter into a memorandum of understanding for pretrial diversion of a defendant, "a prosecutor should focus on the defendant's amenability to correction." Id. at 156. Along with the circumstances of the offense, the following factors *must* be considered: "the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant." Id. (citations omitted); Hammersley, 650 S.W.2d at 355; see also State v.

---

person with whom lies the discretion to grant or deny pretrial diversion). Tennessee Code Annotated section 16-2-508(d) (1997) provides that an assistant district attorney general "shall perform such duties as the district attorney general may require." We infer in the present case that the district attorney general authorized or required the assistant to respond to the diversion request because the district attorney general has essentially ratified the actions of the assistant.

Washington, 866 S.W.2d 950, 951 (Tenn. 1993). If the prosecutor denies pretrial diversion, he must do so in writing and give an enumeration of the evidence he considered and a discussion of the factors he considered along with the weight given to each. State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997); see Curry, 988 S.W.2d at 157 (explaining importance of detailed, written denial); Winsett, 882 S.W.2d at 810.

"If the application is denied, the factors upon which the denial is based must be clearly articulable and stated in the record. . . ." Herron, 767 S.W.2d at 156. If the prosecutor decides the issue on less than all of the mandated factors listed above, he or she *must* state via written record why the factors considered outweigh the other factors. Id. "[T]he circumstances of the offense and the need for deterrence may alone justify a denial of diversion, *but only if all of the relevant factors have been considered as well.*" Curry, 988 S.W.2d at 158 (emphasis in original). Moreover, the circumstances of the offense and the need for deterrence "cannot be given *controlling* weight *unless* they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" Washington, 866 S.W.2d at 951 (first emphasis in original, second emphasis added) (bracketed material in original) (citations omitted). If the prosecutor relies upon documentary evidence, he or she may, but is not required to insert a copy of the documents in the record; however, the prosecutor is "required to identify the factual basis and rationale for the decision to deny pretrial diversion." Pinkham, 955 S.W.2d at 960. In addition to the foregoing items which the prosecutor should include in a written record, he or she should also identify "any factual disputes between the evidence relied upon and the petitioner's application." Id.; see also Winsett, 882 S.W.2d at 810.

If the application is denied, the defendant may seek a writ of *certiorari* to the trial court. Tenn. Code Ann. § 40-15-105(b)(3) (Supp. 1999). "The record as thus far compiled should be attached to the petition." Winsett, 882 S.W.2d at 810. Also, in the petition, the defendant should identify any "disputed fact" which the prosecutor has not identified. Id. The petition for *certiorari* gives the defendant the opportunity to dispute any fact in the record which emanated from the preliminary investigation report or any fact upon which the prosecutor relied which was garnered from sources other than the application or the investigation report.

The defendant has the burden of proving that the district attorney abused his discretion in denying diversion. Id.; State v. Watkins, 607 S.W.2d 486, 488 (Tenn. Crim. App. 1980). "The record must [also] show an absence of any substantial evidence to support the refusal of the District Attorney General to [grant pretrial diversion]." Id. at 488; see State v. Houston, 900 S.W.2d 712, 714 (Tenn. Crim. App. 1995). On review, the trial court must limit its consideration to the evidence which was before the prosecutor *and to the reasons* given by the prosecutor in denying diversion. State v. Brown, 700 S.W.2d 568, 570 (Tenn. Crim. App. 1985); Winsett, 882 S.W.2d at 809.

"The trial court may conduct a hearing *only* to resolve any factual disputes *raised by the prosecutor or the defendant . . .* but *not to hear additional evidence. . .*" Curry, 988 S.W.2d at 157-58 (emphasis added). "The trial judge must also adhere to the same balancing procedure [as is imposed upon the prosecutor], which must be followed on a case by case basis. . . ." Herron, 767

-4-

S.W.2d at 156. The trial court must state its findings in writing. Id.

If the trial court declines to reverse the prosecutor's denial of diversion, the defendant may seek interlocutory review in this court. See generally Tenn. R. App. P. 9, 10. If review is granted by this court, our review is confined to determining whether the trial court's determination is supported by a preponderance of the evidence. Curry, 988 S.W.2d at 158.

## I. Violation of Public Trust

With these principles in mind, we turn to the merits of the case before us. The prosecutor's first basis for denying diversion was that the defendant was a city employee and firefighter who abused a position of trust by deliberately lying under oath. The trial court found this consideration supported by the record and stated, "Those who hold positions of public trust should be held to a higher standard of conduct than the average citizen. The commission of perjury by a person who holds the public's trust is an abuse of that position of trust." To support its conclusion, the trial court relied upon State v. Houston, 900 S.W.2d 712 (Tenn. Crim. App. 1995).

In Houston, the defendant, a captain in the Chattanooga Police Department, was charged with assault following an altercation in a courthouse hallway with the court administrator. Id. at 713. The defendant sought pretrial diversion, which the prosecutor denied. Id. at 714. One of the prosecutor's reasons for denying diversion was the public trust accorded the defendant by virtue of his office within the police department and the higher standard to which he must adhere as a result of that trust. Id. When the trial court declined to reverse the district attorney's denial of diversion, the defendant sought review in this court. Id. We approved the district attorney's consideration of the defendant's status as a public official and the higher standard conferred upon public officials. Id. at 715. Further, we agreed that by committing a crime, a police officer breaches the oath of office which requires him to uphold the law. Id.

Although commended to us by neither of the parties, we have examined State v. James M. Williams, No. 02C01-9710-CR-00388 (Tenn. Crim. App., Jackson, Jan. 5, 1999), perm. app. denied (Tenn. 1999). In James M. Williams, an off-duty police officer struck and killed a man who was either standing in or had stepped into the roadway. Id., slip op at 2. The defendant was charged with several offenses, including driving under the influence and vehicular homicide. Id. The jury acquitted the defendant of all charges except felony leaving the scene of an accident involving death. Id. On appeal, the defendant challenged the trial court's denial of alternative sentencing.[4] Id. This court reversed the trial court and granted the defendant's prayer for probation,

---

[4]In Hammersley, the supreme court commented on the similarities between an inquiry into the propriety of pretrial diversion and an inquiry into the propriety of probation. Hammersley, 650 S.W.2d at 353-355; see also State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (deterrence should be considered in judicial diversion cases to same extent that it is considered in probation cases). Thus, we find the James M. Williams probation analysis instructive in the case at bar. As an aside, we note that James M. Williams presented an issue regarding the trial court's

holding that the defendant was neither entitled to reprieve due to his status as a police officer, nor was he subject to being dealt with harshly for this reason. Id., slip op. at 25. Further, we observed that the offense did not involve public corruption or a contrived plan or scheme. Id.

In Houston, the assault occurred during business hours, apparently while the defendant was on duty and incident to his employment, Houston, 900 S.W.2d at 715, but the offenses in both James M. Williams and the case at bar were not committed on the job. See James M. Williams, slip op. at 3. Moreover, although the defendant in the case at bar is a public official in the sense that he is employed as a firefighter by a municipality, his duties are fire fighting and fire prevention, not law enforcement. As such, we believe off-duty acts that are unrelated to this defendant's duties of public employment are not a proper basis for imposing a higher standard of conduct and thereby justifying a denial of pretrial diversion. Cf. State v. Mary Hopson, No. 01C01-9508-CC-00244 (Tenn. Crim. App., Nashville, Feb. 20, 1997) (diversion denied to police dispatcher who even if unsworn represents law enforcement to the public; also one of the crimes under consideration was committed in uniform); State v. William H. Bowen, Jr., No. 02C01-9409-CC-00199 (Tenn. Crim. App., Jackson, July 19, 1995) (diversion denied to correctional officer who breached public trust by smuggling drugs into prison in which he worked); State v. Gene Watson, No. 01C01-9010-CC-00248 (Tenn. Crim. App., Nashville, June 6, 1991) (diversion denied to bail bondsman who committed on-the-job sexual battery of person for whom he had just made bond, noting that although not a public official, a bail bondsman is a member of the criminal justice system who must be recertified periodically by the court). Accordingly, we hold that the evidence preponderates against the trial court's determination that the assistant district attorney general did not abuse his discretion in denying diversion on the basis of abusing a position of public trust.

## II. Deterrence

The second basis upon which the prosecutor denied diversion is the dramatic increase in perjury and the need to deter such conduct. The trial court's findings reflect that perjury is a serious and growing problem in the judicial system.

Both the prosecutor and the trial court relied upon State v. Perry, 882 S.W.2d 357 (Tenn. Crim. App. 1994). In Perry, the husband and wife defendants were charged with aggravated perjury as a result of testimony they gave in a lawsuit over their default on a promissory note. Id. at 359-60. In approving the prosecutor's reliance on the circumstances of the offense, the Perry court observed

> Perjury strikes at the very heart of the judicial system because it offends the basic principles underlying our judicial system as well as threatens the vitality of the system. Early in the history of this State, some species of perjury were punishable

---

denial of judicial diversion. James M. Williams, slip op. at 20-21. However, the appellate court did not comment on the defendant's status as a public official in affirming the trial court's denial of judicial diversion. See id.

by death, while other species were punishable by death for a second offense. The seriousness of the offense is predicated upon the possibility that the perjured testimony may result in a miscarriage of justice. A convincing and cunning witness who gives perjured testimony may be deemed more credible than an honest, less convincing witness.

Id. at 360 (citations and internal quotations omitted).

In the present case, both the prosecutor and the trial court noted the increasing problem of perjury in the judicial system. This court has said, "No one is in a better position to be informed of criminal activity in a circuit than the District Attorney General." State v. Holland, 661 S.W.2d 91, 93 (Tenn. Crim. App. 1983). Significantly, that statement was made in the context of the prosecutor having denied diversion based in part upon the problem of serious, similar crimes within the circuit and the need to deter such crimes. See id. As applied to the facts of the case at bar, the prosecutor was entitled to rely upon his own institutional knowledge of criminal activity within his circuit, but we believe he was constrained to "identify the factual basis and rationale" for the use of deterrence. See Pinkham, 955 S.W.2d at 960. This the prosecutor did not do.

We are aware that support exists for the notion that perjury is deterrable *per se.* See State v. Charles A. Pinkham, No. 02C01-9502-CR-00040, slip op. at 8 (Tenn. Crim. App., Jackson, May 24, 1996) (offenses of practicing law without a license and perjury are in category of offenses that do not require extrinsic proof to establish the deterrent effect of punishment, as opposed to diversion, on other criminal activity), aff'd on other grounds, 955 S.W.2d 956 (Tenn. 1997); Perry, 882 S.W.2d at 60-61 (discussing deterrence of others as relevant factor for denying pretrial diversion in aggravated perjury case). However, more recently than Perry, this court has held in State v. Cutshaw, 967 S.W.2d 332 (Tenn. Crim. App. 1997), that although perjury is a serious offense striking at the heart of the judicial system, it is not statutorily excluded from consideration for judicial diversion, and therefore, a trial court errs by denying judicial diversion simply because the offense is aggravated perjury. Id. at 344.

Thus, we find no basis in the record to support the use of deterrence as a basis for denying pretrial diversion.

### III. Potential for Rehabilitation

The prosecutor also denied diversion based upon the defendant's limited potential for rehabilitation, as evidenced by his failure to admit his crimes and express remorse. The trial court's order refers to the disputed issue of fact of the defendant's guilt, a defendant's amenability to correction being a proper consideration in diversion cases, and the existence of substantial evidence to support the prosecutor's decision. However, the order contains no conclusion of law which specifically addresses the propriety of the prosecutor's reliance on the defendant's failure to admit his crimes and express remorse.

In past cases, prosecutors have relied on a defendant's failure to admit his crimes and express remorse with mixed results. On one hand, this court has affirmed the denial of pretrial diversion where the failure to admit the crime and/or express remorse reveals that the defendant has been less than truthful with the court. See State v. Karen Sue Kelsey, No. 03C01-9603-CC-00117, slip op. at 7 (Tenn. Crim. App., Knoxville, Oct. 29, 1997), perm. app. denied (Tenn. 1998); State v. Martha Jean Frasier, No. 01C01-9601-CC-00012 (Tenn. Crim. App., Nashville, Dec. 13, 1996); State v. Nease, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986); cf. State v. Stoney Gene Golden, No. 88-146-III, slip op. at 3 (Tenn. Crim. App., Nashville, Apr. 12, 1989) (remorse not a factor to be considered in determining suitability for pretrial diversion), perm. app. denied (Tenn. 1989). On the other hand, this court has ruled that failure to make an admission of guilt in and of itself is not a proper basis for denying diversion. See State v. Dewey L. Clark, No. 03C01-9706-CR-00227, slip op. at 7 (Tenn. Crim. App., Knoxville, July 16, 1998); State v. Christie Quick, 01C01-9510-CC-00323, slip op. at 5-6 (Tenn. Crim. App., Nashville, Feb. 20, 1997); State v. Carl Capps, No. 47 (Tenn. Crim. App., Knoxville, June 13, 1989); cf. State v. King, 640 S.W.2d 30, 33 (Tenn. Crim. App. 1982) (pretrial diversion cannot be conditioned upon entry of guilty plea), overruled on other grounds, State v. Sutton, 668 S.W.2d 678, 680 (Tenn. Crim. App. 1984).

In the present case, the defendant's sworn statement in the diversion application regarding the facts of the offense reads, "I am charged with lying under oath in court relating to calling my wife on the phone. I stated a truthfull [sic] response to questions asked. I did not intentionally mistake [sic] any fact under oath." The prosecutor's denial letter states, "[I]t is a matter of concern to the State that no mea culpa has been issued by the defendant. He has not admitted his crimes and expressed sorrow or regret. Until he does so, his rehabilitative potential is assessed to be limited." Thus, the prosecutor essentially required that the defendant admit guilt as a prerequisite to favorable consideration for pretrial diversion. Our law does not allow this. See Christie Quick, slip op. at 5-6; King, 640 S.W.2d at 33. Diversion was not properly denied upon this basis, and the evidence preponderates against the trial court's affirmance of the denial on this ground.

## Conclusion

The trial court's finding that the district attorney general did not abuse his discretion when he denied pretrial diversion is not supported by a preponderance of the evidence. For this reason, the trial court's judgment is reversed. In this situation, the prescribed remedy is that the case is remanded and the district attorney general shall enter into a pretrial diversion memorandum of understanding with the defendant. See Curry, 988 S.W.2d at 159-60.

-8-