IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2005

## STATE OF TENNESSEE v. KRISTI DANCE OAKES

**Appeal from the Circuit Court for Sevier County**
**No. 10656-II      Richard R. Vance, Judge**

_____

**No. E2005-01668-CCA-R10-CD - Filed January 23, 2006**

_____

The defendant, Kristi Dance Oakes, stands charged in the Sevier County Circuit Court with one count of statutory rape. The district attorney general denied her application for pretrial diversion, an action upheld by the trial court upon certiorari review of that decision. The defendant obtained an interlocutory appeal from this court via Tennessee Rule of Appellate Procedure 10. Following our review, we vacate the order upholding the denial of pretrial diversion and remand the case to the trial court.

**Tenn. R. App. P. 10; Judgment of the Circuit Court is Vacated and Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Barry H. Valentine, Newport, Tennessee, for the Appellant, Kristi Dance Oakes.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and Al Schmutzer, Jr., District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The facts relied upon by the prosecutor in denying the defendant's application are largely drawn from the defendant's pretrial statement and her application for pretrial diversion. At the time of the offense in question, the defendant was a married, 33-year-old teacher at Seymour High School, who held a masters degree in school curriculum and instruction. The victim, a 16-year-old male student at Seymour High School, had taken the defendant's biology class during his tenth grade term, which was some time prior to the 2003-04 school term.

In June 2004, during the school vacation term, the defendant and the victim were employed at an amusement park in Pigeon Forge. A number of public school teachers as well as students apparently worked at the park during the summer of 2004, and it was common among them to make arrangements for car-pooling to limit transportation expense. In this vein, the defendant and

the victim discussed riding together, and the defendant obtained permission from the victim's mother to allow the victim to commute with the defendant.

On June 22, 2004, pursuant to this arrangement, the victim rode to work with the defendant and waited for the defendant's longer shift to end before being taken home. The defendant's statement describes the ensuing events:

> I was ill, having a high blood pressure spike and needing my medications, so we stopped to get gas and something to eat and drink. He wanted to learn how to drive my car, which was a straight shift, just in case he might need to drive my car if there was ever a time when I could not do so due to my occasional health issues. We then drove out to Douglas Lake and talked. [The victim] leaned across and kissed me. He wanted to move to the back to stretch his legs out and be comfortable. I then moved to the back as well. He then leaned over and kissed me again. This time, he reached and fondled my breasts. He then took his shirt off and I gave him a back and hand massage. He then leaned back and kissed me again then flipped over so that he was facing me. He began fondling my breasts and my butt. He then removed his shorts and underwear. He acted as if he was going to pull my shorts down and I told him no. I fondled his penis and then performed oral sex on him. This was our first and only sexual encounter. I terribly regret what occurred and realize it should never have happened. I called [the victim's] mother the next morning and apologized for what transpired the night before. Shortly thereafter, I went to [the amusement park] and resigned. In addition, I initiated a voluntary resignation from Sevier County Schools within a few days time . . . .

The district attorney general denied the application for pretrial diversion, basing his denial upon (1) the defendant's role as an authority figure to the victim, (2) the disparity in ages between the defendant and the victim, and (3) the defendant's occupation in a "position of confidence and trust in the community." Following certiorari review, the trial court found that the defendant occupied a position of confidence and trust and that this fact supported the prosecutor's denial of pretrial diversion.

In order to be eligible for pretrial diversion, a defendant must not have been previously granted pretrial or judicial diversion; must not have a prior misdemeanor conviction in which the defendant served a sentence of confinement or a prior felony conviction within a five-year period after completing the sentence or probationary period for the prior conviction; and must not be seeking diversion for a Class A or B felony, certain sexual offenses not involved in this case, driving under the influence, or vehicular assault. Tenn. Code Ann. § 40-15-105(B)(i)(a)-(c) (2003). "A person who is statutorily eligible for pretrial diversion is not presumptively entitled to diversion."

-2-

*State v. Yancey*, 69 S.W.3d 553, 557 (Tenn. 2002) (citing *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999)).

The decision whether to grant pretrial diversion rests within the discretion of the district attorney general. *See* Tenn. Code Ann. § 40-15-105(b)(3) (2003); *State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983). The process of applying for, adjudicating, and reviewing pretrial diversion is attended by formulaic rules.

The burden is upon the defendant, "in the first instance, to provide the prosecuting attorney with sufficient background information and data to enable that officer to make a reasoned decision to grant or deny the relief sought." *State v. Herron*, 767 S.W.2d 151, 156 (Tenn. 1989), *overruled in part by State v. Yancey*, 69 S.W.3d 553, 559 (Tenn. 2002). To carry the burden, an applicant should provide the prosecutor with "as complete an application as circumstances warrant." *State v. Winsett*, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993).

Even though the defendant has the burden to demonstrate his or her eligibility and suitability for pretrial diversion, the prosecutor has specific obligations, especially when he or she denies the application. *Curry*, 988 S.W.2d at 157. Our appellate courts have forged the following guidelines for prosecutors' use when considering applications for pretrial diversion:

> (1) The prosecutor should focus on the defendant's amenability to correction. *Id*. at 156.
>
> (2) The prosecutor must consider (a) the circumstances of the offense, (b) the defendant's criminal record, (c) the defendant's social history, (d) the physical and mental condition of the defendant where appropriate, and (e) the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and the defendant. *Id.*; *Hammersley*, 650 S.W.2d at 355; *see also State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993).
>
> (3) "[T]he circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if [(a)] all of the relevant factors have been considered as well," *Curry*, 988 S.W.2d at 158, and (b) only when the circumstances are of such overwhelming significance that they necessarily outweigh all other factors, *Washington*, 866 S.W.2d at 951.
>
> (4) Although this court has affirmed the denial of pretrial diversion where the failure to admit the crime and/or express remorse revealed that the defendant had been less than truthful with the court, *see State v. Karen Sue Kelsey*, No. 03C01-9603-CC-00117, slip op. at 7 (Tenn. Crim. App., Knoxville, Oct. 29, 1997), *perm. app. denied* (Tenn.

1998); *State v. Martha Jean Frasier*, No. 01C01-9601-CC-00012, slip op. at 12-13 (Tenn. Crim. App., Nashville, Dec. 13, 1996); *State v. Nease*, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986), remorse per se is not a factor in determining suitability for pretrial diversion, *see State v. Stoney Gene Golden*, No. 88-146-III, slip op. at 3 (Tenn. Crim. App., Nashville, Apr. 12, 1989), *perm. app. denied* (Tenn. 1989), and the failure of the defendant to admit guilt is not, in and of itself, a proper basis for denying diversion, *see State v. Dewey L. Clark*, No. 03C01-9706-CR-00227, slip op. at 7 (Tenn. Crim. App., Knoxville, July 16, 1998); *State v. Christie Quick*, No. 01C01-9510-CC-00323, slip op. at 5-6 (Tenn. Crim. App., Nashville, Feb. 20, 1997); *cf. State v. King*, 640 S.W.2d 30, 33 (Tenn. Crim. App. 1982) (pretrial diversion cannot be conditioned upon entry of guilty plea), *overruled on other grounds by State v. Sutton*, 668 S.W.2d 678, 680 (Tenn. Crim. App. 1984).

(5) A denial of the application (a) must be in writing and (b) must contain not only an enumeration of the evidence the prosecutor considered but also a discussion of the weight given to each factor, *State v. Pinkham*, 955 S.W.2d 956, 960 (Tenn. 1997); *see Curry*, 988 S.W.2d at 157 (explaining importance of detailed, written denial); *Winsett*, 882 S.W.2d at 810, and of why unfavorable factors outweigh favorable ones, *Herron*, 767 S.W.2d at 156.

(6) "In addition to the foregoing items which the prosecutor should include in a written record, he or she should also identify 'any factual disputes between the evidence relied upon and the petitioner's application.'" *Pinkham*, 955 S.W.2d at 960; *see Winsett*, 882 S.W.2d at 810.

If the application is denied, the defendant may seek a writ of certiorari in the trial court. Tenn. Code Ann. § 40-15-105(b)(3) (2003). The Code and the appellate courts have prescribed the procedure for the petitioner to follow:

(1) The compiled record should be attached to the petition. *Winsett*, 882 S.W.2d at 810.

(2) In the petition, the defendant should identify any disputed facts which the prosecutor has not identified. *State v. Lane*, 56 S.W.3d 20, 26 (Tenn. Crim. App. 2000).

(3) The defendant has the burden of proving that the district attorney abused his or her discretion in denying diversion, *State v. Watkins*,

607 S.W.2d 486, 488 (Tenn. Crim. App. 1980), a process that may entail showing an absence of any substantial evidence in the record to support the prosecutor's denial of pretrial diversion, *Lane*, 56 S.W.3d at 26; *see State v. Houston*, 900 S.W.2d 712, 714 (Tenn. Crim. App. 1995).

Upon receiving a petition for certiorari filed by an aggrieved applicant for pretrial diversion, the trial court must then follow a prescribed procedure:

(1) The trial court limits its consideration to the evidence which was before the prosecutor and to the reasons given by the prosecutor in denying diversion. *State v. Brown*, 700 S.W.2d 568, 570 (Tenn. Crim. App. 1985); *Winsett*, 882 S.W.2d at 809.

(2) The trial court may conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant; the court may not hear additional evidence. *Curry*, 988 S.W.2d at 157-58.

(3) The trial court must also adhere to the same case-by-case balancing procedure that is imposed upon the prosecutor. *Herron*, 767 S.W.2d at 156.

(4) The trial court must state its findings in writing. *Id.*

If the trial court declines to reverse the prosecutor's denial of diversion, the defendant may seek interlocutory review in this court. *See generally* Tenn. R. App. P. 9, 10; Tenn. R. Crim. P. 38. If review is granted by this court, our review is confined to determining whether the trial court's determination is supported by a preponderance of the evidence. *Curry*, 988 S.W.2d at 158.

Applying the rules to the prosecutor's review of the pretrial diversion petition, we find departures from the prescribed process. We find no indication in the prosecutor's response that he considered all of the mandated factors, and we note that the defendant's apparently good prospects for rehabilitation, lack of a criminal record, and her excellent social history support her bid for pretrial diversion. These factors were addressed, some cogently, by the authors of 20 letters commending the defendant that were attached to the application for pretrial diversion. Although the prosecutor mentions that he reviewed the letters, he did not address the letters' positive indications of potential for rehabilitation and excellence of social history. The response neither addresses the defendant's lack of a criminal record nor her spontaneous and voluntary confession of her crime to the victim's mother and to her employers. We suspect that, without the defendant's initiative, the offense would have gone undetected.

It goes without saying that, with no mention of these several vital factors favoring diversion, the prosecutor's response did not reveal his weighing of the mandated factors and did not

explain why the negative factors that he relied upon outweighed the positive factors. Obviously, the circumstances of the offense were paramount in the prosecutor's decision, but his response fails to articulate that he considered all of the factors supporting diversion before deciding that the circumstances of the offense overwhelmed the aggregate positive factors.

In *State v. Bell*, 69 S.W.3d 171 (Tenn. 2002), our supreme court said,

[W]e disagree with the dissenting view that a district attorney general's failure to consider all of the relevant factors, including any evidence favorable to a defendant, is of no consequence as long as the reasons stated for denying diversion are supported by the record. Such a holding would be contrary to our long-established cases that require a district attorney general to focus upon a defendant's amenability to correction. Moreover, it is the consideration of all of the relevant factors that ensures that the district attorney general properly exercises his or her discretion and identifies suitable candidates for pretrial diversion. Thus, failing to do so constitutes an abuse of discretion.

*Id.* at 178 (citations omitted). The *Bell* court further commented:

Moreover, in our view, the district attorney general's failure to consider all of the relevant factors, including evidence favorable to the defendant, cannot be cured by the trial court's review. Because the trial court does not have appropriate findings made by the district attorney general upon which to review, allowing it to "fill in the gaps" would extend de novo review over the district attorney general's decision and would allow the trial court to substitute its view over the pretrial diversion decision-making process.

*Id.* at 179.

Turning to the trial court's determination, we discern that the court generally followed the procedure for reviewing the prosecutor's denial of pretrial diversion; however, the court did not address the deficiencies in the prosecutor's response to the diversion application. Furthermore, the court apparently rejected two of the prosecutor's grounds for denying diversion, that the defendant was an authority figure and that the disparity of ages between the defendant and the victim was egregious. The trial court settled upon the defendant's role of confidence and trust in the community as a basis for denying pretrial diversion. As was the case with the prosecutor, the trial court did not recount any consideration of factors supporting diversion and did not articulate why the defendant's role in the community, as a circumstance of the offense, overwhelmed these factors.

Based upon this record, we conclude that both the trial court's and the prosecutor's determinations are unsupported, and the trial court's order should be vacated. Because the legal basis for this ruling on appeal is essentially the prosecutor's failure to follow prescribed guidelines and not because the position of confidence and trust circumstance is per se inapposite, we remand with instructions for the trial court to order the prosecutor to withdraw his denial of diversion and to embark upon a full consideration of the application as the guidelines require. *See Bell*, 69 S.W.3d at 179 (stating that when the district attorney general abuses discretion by denying pretrial diversion "without considering and weighing substantial evidence favorable to a defendant, it follows that the decision must be reversed and the case remanded to the district attorney general for further consideration of all of the relevant factors in a manner consistent with [the Supreme] Court's decisions").

_____
JAMES CURWOOD WITT, JR., JUDGE