IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 24, 2008

## STATE OF TENNESSEE v. GLEN ANDREW ADAMS

### Appeal from the Circuit Court for Cocke County
### No. 0030    Ben W. Hooper, II, Judge

### No. E2007-01754-CCA-R3-CD - Filed August 8, 2008

The Defendant, Glen Andrew Adams, was charged with Class C felony manufacture of marijuana. The Defendant applied for pretrial diversion, and the district attorney general denied his request. The trial court reversed, concluding that the district attorney abused his discretion and ordering that the Defendant be placed on pretrial diversion. The State appeals. Following our review of the record, the judgment of the Cocke County Circuit Court ordering the district attorney general to grant the Defendant diversion is reversed. This case is remanded to the trial court for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Remanded

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Clyde A. Dunn, Newport, Tennessee, for the Appellant, Glen Andrew Adams.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; and James B. Dunn, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual Background

The Defendant and his wife resided with the Defendant's wife's brother, William Weeks. During a search of the residence, authorities discovered forty-nine marijuana plants inside and other items used to grow marijuana. In July 2006, a Cocke County grand jury returned a presentment against the Defendant for manufacture of marijuana by cultivating not less than twenty nor more than ninety-nine marijuana plants, a Class C felony. See Tenn. Code Ann. § 39-17-417(g)(3).

The Defendant filed an application for pretrial diversion contending that he was an "exemplary citizen." In support of his application, the Defendant, then thirty-five years old, stated

that he was married and had two children. He asserted that he moved to Cocke County in order to be closer to his family and to participate in community activities, such as coaching little league sports. He claimed that he did this despite the fact that his metal working skills could have provided him more lucrative employment elsewhere. Regarding his criminal history, he averred that he had no prior criminal history other than a misdemeanor conviction for attending a cock-fight in 2005. As far as his employment record, the Defendant provided information that he had been previously employed as a machinist and then as a "tool and die maker" and was currently employed as a metal works teacher at Cocke County Vocational School. Attached to the application were numerous letters of recommendation "from prominent members of [the] community, including the Superintendent of Schools, the Director of the Vocational School and the Supervisor of Cocke County School System."

The Defendant provided the following recitation of the facts of the offense: "I was unaware that [William Weeks] grew marijuana in a room in the residence where my family and I were staying. The door had always been locked." He also asserted that William Weeks, in a previous statement to the trial court, "admitted that he alone was responsible for the growing and cultivation of the marijuana in his home and that [the Defendant] had no knowledge of his marijuana growing activities."

On June 1, 2007, the district attorney general denied the Defendant's request for pretrial diversion. The district attorney gave the following reasons for the denial:

1. Circumstances of the Offense
   On 10/3/05 agents from the 4th Judicial District Drug Task Force executed a search warrant at 4180 Bow Way, Cosby, TN. The owner of the residence was present at the time of the search. Found in the residence were approximately forty-nine marijuana plants and many products used to grow[] and cultivate marijuana.

2. Defendant's Criminal Record
   The [D]efendant has not had a prior felony conviction for which a sentence of confinement was served, and apparently he has not previously been granted diversion. The [D]efendant was convicted for being in attendance at a cock fight on 7/25/05, at which time this lab was in operation.

3. Defendant's Social History
   Good from the standpoint that he is a teacher at the Cocke County Vocational School, but negative from the standpoint that he was in a position of trust (teacher of children) at the time of the offense. Overall, this is considered negative by the State.

4. Defendant's Physical Condition
   Unknown

5. Defendant's Mental Condition
   Unknown

6. Attitude of the Defendant

Poor, since he denies any knowledge of the marijuana growing in his home. According to the Director of the Drug Task Force, this is incredible due to the odor and the sound of the fans. The confidential informant in this case was shown the grow room by both William Weeks and [the Defendant.] See attached letter [of Mack Smith].

7. Defendant's Behavior Since Arrest

Unknown

8. Defendant's Home Environment

Unknown

9. Defendant's Current Drug and Alcohol Usage

Unknown

10. Defendant's Emotional Stability

Unknown

11. Defendant's Employment

Good, but see the comments about regarding concerns of this occurring while the [D]efendant was in a position of trust teaching children.

12. General Reputation of the Defendant

Apparently favorable due to the references provided by the defense.

13. Defendant's Marital Stability and Family Responsibility

Apparently favorable.

14. Attitude of Law Enforcement

The Director of the Drug Task Force is adamantly opposed to diversion. It should be noted that the Fourth Judicial District, particularly in Cocke County has a substantial drug problem. The [D]efendant had a tenant, William Weeks who admits to selling marijuana "to supplement" his income, which marijuana was grown in the [D]efendant's home.

15. Recommendation of Probation Officer

None.

16. Deterrence

Given the circumstances of the offense, where the [D]efendant was allowing the growing and selling of marijuana in a county with a substantial drug problem, deterrence must be a strong consideration in this cause.

17. Amenability to Correction

Generally favorable. The [D]efendant would likely be a suitable candidate for probation, possibly with split confinement as an option.

CONCLUSION

Factors 2 and 17 are favorable to the [D]efendant. Factors 3, 6, 14 and 16 are unfavorable to the [D]efendant. Factors 2, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 15 are being treated as neutral.

The [D]efendant is charged with manufacturing marijuana, based on the criminal responsibility for the actions of another, in the case, William Weeks.

The [D]efendant has as many favorable factors as unfavorable factors in his diversion request; however, the unfavorable factors are significant ones.

The request for pre-trial diversion is DENIED.

Attached to the district attorney's response was a letter from Mack Smith, Director of the Fourth Judicial District Drug & Violent Crime Task Force. He explained that the search of the home resulted in the recovery of forty-nine marijuana plants, and he described the operation as "fairly sophisticated with three high-intensity light systems and several large fans for cooling and ventilation." He also opined that the "grow appeared to have been operating for a lengthy period of time." Upon entering the residence, he detected a strong odor of marijuana and, "[b]efore entering the grow room[,] a lot of heat could be felt radiating from the unopened door and the sounds emitted by the fans inside were very noticeable." In Director Smith's opinion, it was "impossible" for the Defendant and his wife not to know that marijuana was being grown inside the home. "Even if they tried to ignore it, they would be constantly inundated with suspicious sights, sounds, and smells produced by the manufacturing operation." Finally, he noted that the confidential informant told him that both William Weeks and the Defendant were present when the informant was shown the operation.

The Defendant filed a petition for writ of certiorari and a memorandum in support of that petition, contending that the district attorney general abused his discretion by denying pretrial diversion. A hearing was held on July 11, 2007.

At the hearing, the Defendant testified that William Weeks was the owner of the home and that he and his wife were merely tenants. The search warrant was issued for the search of the residence of William Weeks, and the warrant referred to buildings controlled by Weeks and the Defendant. He further asserted that he had no knowledge marijuana was being grown inside the residence. Finally, the Defendant denied showing anyone the "grow room," disputing the hearsay evidence relied on by the district attorney.

At the conclusion of the hearing, the trial court granted the Defendant's petition and ordered the district attorney to grant the Defendant's application for pretrial diversion. The trial court explained its decision as follows:

And then the final analysis on this is I've got [the Defendant] right here in the palm of my hand, and I don't like to be in that position. And I can just squeeze him to death and ruin his life, take his livelihood away from him. He's married and got two children.

I'm going to take a chance on him. I'm going to place him on pre-trial diversion. I thought what [Mack] Smith had to say, it's because I do respect him, and we can argue about this, but he's saying that denial of diversion in this case would have a resulting deterrent effect on students and community members.

Well, the granting of the diversion would actually place you, [the Defendant], in a position to where you could be a loud voice to everybody you come into contact with. Don't operate in a gray area. Don't put yourself in any position where you might find yourself sitting in this courtroom as you are right now.

Pursuant to Tennessee Rule of Appellate Procedure 3, the State now appeals from the order of the trial court granting pretrial diversion.[1]

## ANALYSIS

The pretrial diversion statute allows a district attorney general to suspend the prosecution of an eligible defendant for a period not to exceed two years. See Tenn. Code Ann. § 40-15-105(a)(1)(A). In order to qualify for pretrial diversion, a defendant must not have been previously granted pretrial or judicial diversion; must not have a prior misdemeanor conviction for which the defendant served a sentence of confinement or a prior felony conviction within a five-year period after completing the sentence or probationary period for the prior conviction; and must not be seeking diversion for a Class A or B felony, certain Class C felonies (not involved in this case), a sexual offense, driving under the influence, or vehicular assault. Tenn. Code Ann. § 40-15-105(a)(1)(B)(i)(a)-(c).

There is no presumption that a person eligible for pretrial diversion is entitled to diversion. State v. Yancey, 69 S.W.3d 553, 557 (Tenn. 2002); State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999). The "defendant bears the burden of establishing that pretrial diversion is appropriate and in the interest of justice"; therefore, it is the responsibility of the defendant to provide "substantial favorable evidence for the district attorney general's consideration." State v. Bell, 69 S.W.3d 171, 179 (Tenn. 2002). To carry the burden, an applicant should provide the prosecutor with "as complete an application as the circumstances warrant." State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993).

---

[1] The Defendant does not challenge the propriety of the State's appeal of this issue under Tennessee Rule of Appellate Procedure 3. Even had the appeal under Rule 3 been improper, Tennessee courts have long recognized that we may "transform an appeal improperly filed under Rule 3 of the Tennessee Rules of Appellate Procedure into a proper appeal under Rule 10 of the Tennessee Rules of Appellate Procedure." State v. Kenneth Bryan Harris, No. 01-C01-9807-CR-00305, 1999 WL 357344, at *5 n.2 (Tenn. Crim. App., Nashville, June 4, 1999), modified, 33 S.W.3d 767 (Tenn. 2000).

The decision to grant or deny an application for pretrial diversion rests within the discretion of the district attorney general. Tenn. Code Ann. § 40-15-105(b)(3). The district attorney's decision is viewed as "presumptively correct" and will not be set aside unless there is a finding of gross and patent abuse of discretion. Bell, 69 S.W.3d at 178; State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983).

This Court recently provided a thorough overview of the roles of the district attorney general and the reviewing trial court in pretrial diversion proceedings:

Even though the defendant has the burden to demonstrate his or her eligibility and suitability for pretrial diversion, the prosecutor has specific obligations, especially when he or she denies the application. Curry, 988 S.W.2d at 157. Our appellate courts have forged the following guidelines for prosecutors' use when considering applications for pretrial diversion:

(1) The prosecutor should focus on the defendant's amenability to correction. Id. at 156.

(2) The prosecutor must consider (a) the circumstances of the offense, (b) the defendant's criminal record, (c) the defendant's social history, (d) the physical and mental condition of the defendant where appropriate, and (e) the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and the defendant. Id.; Hammersley, 650 S.W.2d at 355; see also State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993).

(3) "[T]he circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if [(a)] all of the relevant factors have been considered as well," Curry, 988 S.W.2d at 158, and (b) only when the circumstances are of such overwhelming significance that they necessarily outweigh all other factors, Washington, 866 S.W.2d at 951.

(4) Although this court has affirmed the denial of pretrial diversion where the failure to admit the crime and/or express remorse revealed that the defendant had been less than truthful with the court, see State v. Karen Sue Kelsey, No. 03C01-9603-CC-00117, slip op. at 7 (Tenn. Crim. App., Knoxville, Oct. 29, 1997), perm. app. denied (Tenn. 1998); State v. Martha Jean Frasier, No. 01C01-9601-CC-00012, slip op. at 12-13 (Tenn. Crim. App., Nashville, Dec. 13, 1996); State v. Nease, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986), remorse per se is not a factor in determining suitability for pretrial diversion, see State v. Stoney Gene Golden, No. 88-146-III, slip op. at 3 (Tenn. Crim. App., Nashville, Apr. 12, 1989), perm. app. denied (Tenn. 1989), and the failure of the defendant to admit guilt is not, in and of itself, a proper basis for denying diversion, see State v. Dewey L. Clark, No. 03C01-9706-CR-00227, slip op. at 7 (Tenn. Crim. App., Knoxville, July 16, 1998); State v. Christie Quick, No. 01C01-9510-CC-00323, slip op. at 5-6 (Tenn. Crim. App., Nashville, Feb. 20, 1997); cf. State v. King, 640 S.W.2d 30, 33 (Tenn.

Crim. App. 1982) (pretrial diversion cannot be conditioned upon entry of guilty plea), overruled on other grounds by State v. Sutton, 668 S.W.2d 678, 680 (Tenn. Crim. App. 1984).

(5) A denial of the application (a) must be in writing and (b) must contain not only an enumeration of the evidence the prosecutor considered but also a discussion of the weight given to each factor, State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997); see Curry, 988 S.W.2d at 157 (explaining importance of detailed, written denial); Winsett, 882 S.W.2d at 810, and of why unfavorable factors outweigh favorable ones, [State v.] Herron, 767 S.W.2d [151,] 156 [(Tenn. 1989), overruled in part by Yancey, 69 S.W.3d at 559].

(6) "In addition to the foregoing items which the prosecutor should include in a written record, he or she should also identify 'any factual disputes between the evidence relied upon and the petitioner's application.'" Pinkham, 955 S.W.2d at 960; see Winsett, 882 S.W.2d at 810.

If the application is denied, the defendant may seek a writ of certiorari in the trial court. Tenn. Code Ann. § 40-15-105(b)(3) (2003). The Code and the appellate courts have prescribed the procedure for the petitioner to follow:

(1) The compiled record should be attached to the petition. Winsett, 882 S.W.2d at 810.

(2) In the petition, the defendant should identify any disputed facts which the prosecutor has not identified. State v. Lane, 56 S.W.3d 20, 26 (Tenn. Crim. App. 2000).

(3) The defendant has the burden of proving that the district attorney abused his or her discretion in denying diversion, State v. Watkins, 607 S.W.2d 486, 488 (Tenn. Crim. App. 1980), a process that may entail showing an absence of any substantial evidence in the record to support the prosecutor's denial of pretrial diversion, Lane, 56 S.W.3d at 26; see State v. Houston, 900 S.W.2d 712, 714 (Tenn. Crim. App. 1995).

Upon receiving a petition for certiorari filed by an aggrieved applicant for pretrial diversion, the trial court must then follow a prescribed procedure:

(1) The trial court limits its consideration to the evidence which was before the prosecutor and to the reasons given by the prosecutor in denying diversion. State v. Brown, 700 S.W.2d 568, 570 (Tenn. Crim. App. 1985); Winsett, 882 S.W.2d at 809.

(2) The trial court may conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant; the court may not hear additional evidence. Curry, 988 S.W.2d at 157-58.

(3) The trial court must also adhere to the same case-by-case balancing procedure that is imposed upon the prosecutor. Herron, 767 S.W.2d at 156.

(4) The trial court must state its findings in writing. Id.

State v. Kristi Dance Oakes, No. E2005-01668-CCA-R10-CD, 2006 WL 176550, at *2-4 (Tenn. Crim. App., Knoxville, Jan. 23, 2006).

For purposes of our review, this Court is "bound by the factual findings made by the trial court unless the evidence preponderates against them." Bell, 69 S.W.3d at 177. "However, if the evidence of record is undisputed and calls for no finding of fact to resolve the issue, a trial court's determinations constitute conclusions of law to which an appellate court is not bound." State v. Carr, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993) (citations omitted). Therefore, when the facts are undisputed, the underlying issue that this Court must determine on appeal remains whether, as a matter of law, the district attorney general abused his or her discretion in denying pretrial diversion. Id.; State v. Brooks, 943 S.W.2d 411, 413 (Tenn. Crim. App. 1997); State v. Theresa Hallsford, No. M2002-00959-CCA-R3-CD, 2002 WL 31852858, at *2 (Tenn. Crim. App., Nashville, Dec. 20, 2002).

In determining whether a defendant is entitled to pretrial diversion, the trial judge "may not re-weigh the evidence or substitute its view for that of the district attorney general." Bell, 69 S.W.3d at 179. "It is critical to emphasize that the discretion to grant or deny pretrial diversion rests with the district attorney general, not the trial court." Id.

The district attorney general noted in his response that the Defendant's social history was good as he was a teacher at Cocke County Vocational School, that the general reputation of the Defendant was favorable based upon the letters of recommendation provided by the defense, that his marital stability and family responsibility were favorable, and that his employment history was good. However, the district attorney stated that the Defendant's social and employment history were negative from the standpoint that he was in a position of trust as a teacher during the time marijuana was grown inside his home.

The district attorney acknowledged that the Defendant had no prior criminal history other than a misdemeanor conviction for attending a cock-fight in 2005. The district attorney also described the circumstances of the offense, stating that approximately forty-nine marijuana plants and many products used to grow and cultivate marijuana were found during the search of the residence. The district attorney opined that the attitude of the Defendant was poor given that he denied knowledge of the operation and that Director Smith said that this was "incredible due to the odor and sound of the fans." He also confirmed that the confidential informant relayed that both the Defendant and William Weeks were present when the informant was shown the "grow room."

Finally, the district attorney cited the need for deterrence given the circumstances of the offenses and because Cocke County had "a substantial drug problem." He also relayed that Director Smith was "adamantly opposed to diversion." The district attorney observed that the Defendant was generally amenable to correction and that the Defendant would "be a suitable candidate for probation, possibly with split confinement as an option." The district attorney then concluded that the unfavorable factors—the Defendant was in a position of trust, the Defendant's "attitude" regarding denial of the offense, the circumstances of the offense, and the need for deterrence in Cocke County—were "significant ones" and denied the Defendant's request for diversion.

First, we must agree with the Defendant that the district attorney erred when he based his denial of Defendant's request for pretrial diversion on a finding that Defendant had violated the public's trust because he was a teacher at Cocke County Vocational School. "[O]ff-duty acts that are unrelated to [the D]efendant's duties of public employment are not a proper basis for . . . justifying a denial of pretrial diversion." Lane, 56 S.W.3d at 27. The Defendant's acts were unrelated to his duties of public employment. Nonetheless, we conclude that the district attorney general's decision is supported by the record.

The Tennessee Supreme Court stated in Curry that "the circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if all of the relevant factors have been considered as well." 988 S.W.2d at 158. Here, the district attorney also cited to the Defendant's "attitude," stating that the Defendant denied any knowledge of the growing operation and that Director Smith opined that this was "incredible due to the odor and the sound of the fans." Moreover, the confidential informant relayed that both Weeks and the Defendant showed him the "grow room." Because no adjudicative element is present within the pretrial context, reliable hearsay evidence may be considered by the district attorney general in arriving at his decision to grant or deny diversion. State v. Charles A. Pinkham, No. 02C01-9502-CR-00040, 1996 WL 275048, at *5 (Tenn. Crim. App., Jackson, May 24, 1996), aff'd, 955 S.W.2d 956. Director Smith's letter further supports the district attorney's conclusions about the Defendant's actions. Director Smith opined that the operation was "sophisticated" and "appeared to have been operating for a lengthy period of time."

In this case, there were no factual disputes presented at the hearing to be resolved by the trial court. The issue is primarily whether, as a matter of law, the prosecutor abused his discretion by denying the Defendant pretrial diversion. See Carr, 861 S.W.2d at 856. In a close case where the prosecutor could have legitimately granted or denied the application, the trial court must defer to the judgment of the prosecutor.[2] Hallsford, 2002 WL 31852858, at *2 (citing Carr, 861 S.W.2d at 856). Here, the trial court considered all relevant factors. The trial court stated that there were both favorable and unfavorable factors to be considered. However, the trial court apparently disagreed with the prosecutor's conclusion that the factors considered against diversion outweighed the factors

---

[2] Obviously, if the trial judge disagrees with the district attorney's decision to deny pretrial diversion, the trial judge could grant judicial diversion under Tennessee Code Annotated section 40-35-313 after a guilty plea or a finding of guilt. Judicial diversion, if successful, has a similar effect as pretrial diversion, resulting in a dismissal of the charges. See Tenn. Code Ann. § 40-35-313.

considered in favor of diversion. In our view, the trial court impermissibly substituted its judgment for the judgment of the prosecutor.

We conclude that the district attorney did not abuse his discretion by denying the Defendant's application for pretrial diversion. While he considered relevant factors in favor of diversion, such as the Defendant's lack of a significant criminal history, his good family, social, and employment history, as well as his amenability to correction, he concluded that they were outweighed by the attitude of the Defendant, the need for deterrence in Cocke County, and the circumstances of the offense. Such a decision was within his discretion. See, e.g., State v. Frank Ray Ruth, No. E2006-01008-CCA-R10-CD, 2007 WL 316408 (Tenn. Crim. App., Knoxville, Feb. 5, 2007); Hallsford, 2002 WL 31852858, State v. Karen Kay Shrewsbury, No. 01C01-9308-CC-00264, 1994 WL 390453 (Tenn. Crim. App., Nashville, July 28, 1994).

## CONCLUSION

The judgment of the trial court ordering the district attorney general to grant the Defendant pretrial diversion is reversed. This case is remanded to the trial court for further proceedings.

_____
DAVID H. WELLES, JUDGE